[No. 9632–7–III.   Division Three.   July 20, 1989.]

CARNATION COMPANY, INC., *Appellant,* v. MADGE L. HILL, *Respondent.*

---

MUNSON, J., dissents in part by separate opinion.

*Wayne Williams* and *Rolland, O'Malley & Williams, P.S.,* for appellant.

*Kathleen Kilcullen* and *Calbom & Schwab,* for respondent.

THOMPSON, C.J.—Carnation Company appeals a judgment on a verdict which upheld the finding of the Board of Industrial Insurance Appeals that Madge Hill had sustained an industrial injury while working for Carnation. Carnation is self–insured for industrial insurance purposes.

The primary issues concern the Superior Court's exclusion of medical records considered by the Board and its award of attorney fees to Ms. Hill. We affirm the portion of the judgment upholding the Board's finding, but reverse the Superior Court's award of fees.

Ms. Hill was employed by Carnation in 1977. On March 3, 1983, this 60–year–old woman was working in palletizing, which required her to move large boxes weighing 18 to 24 pounds from a conveyor belt to a pallet on the floor. While lifting a box, she felt a catch in her back and was unable to straighten up. She testified she experienced severe pain in her lower back and down her left leg. After that day, she did not return to work.

Although Ms. Hill consulted her physician immediately, she did not file an accident report with Carnation until October 20, 1983. On November 23, 1983, the Department of Labor and Industries rejected her claim of an industrial injury. On reconsideration, the Department set aside its original order, but still rejected Ms. Hill's claim on the basis that her condition was preexisting and was not related to the accident. Ms. Hill appealed to the Board, and a hearing was held.

Two orthopedic surgeons who examined Ms. Hill testified at the Board hearing. Dr. Scott Linder was of the opinion that the accident caused Ms. Hill's disability. He stated it was predictable that the type of work she was engaged in would aggravate the back problems she had in the past. On the other hand, Dr. Patrick Halpin believed that Ms. Hill's complaints were consistent with the progression of a degenerative disease process. He specifically noted that she had visited her doctor as recently as December 1982 complaining of pain in the left buttock and a charley horse.

At the hearing on October 30, Carnation also offered exhibit 1, office notes of Ms. Hill's personal physician from 1966 through May 1981; exhibit 2, physician office records for the period of December 1981 through May 10, 1983; and exhibit 3, records from Samaritan Hospital. These records document that Ms. Hill had been previously diagnosed in

1978 and in 1982 as suffering from diseases of the lower back variously described as spinal stenosis, spondylolisthesis, and degenerative disc disease. However, the majority of the records contained in the exhibits relate to other conditions not pertinent to her alleged disability.

Ms. Hill's attorney stipulated "to the fact that [the exhibits] are the records to [*sic*] which they purport to be . . ., we are not waiving objections as to the relevancy, materiality, collateral, source, prejudicial information, et cetera." The Board record also contains a letter from Ms. Hill's attorney to the industrial appeals judge dated November 14, 1984:

> Thank you for your November 6, 1984 letter and its enclosures. Enclosed are copies of those exhibits to which this office objects as that material is irrelevant, immaterial and prejudicial. In regard to the DSHS examination that information is a collateral source. In regard to the stab wounds and alcoholism references that information is again irrelevant, immaterial and prejudicial.

The record does not contain a ruling on these objections.

A polygraph technician testified in Ms. Hill's behalf at the hearing. He described his extensive experience in the area, the procedures which he used in testing Ms. Hill, and his opinion that Ms. Hill was telling the truth when she stated that the accident of March 3, 1983, caused her disability. As part of her proposed decision and order, the industrial appeals judge granted Carnation's motion to quash testimony regarding the polygraph results.

The industrial appeals judge found Ms. Hill credible and concluded that the Department's order denying her coverage should be set aside. The Board denied Carnation's petition for review and adopted the proposed decision of the industrial appeals judge as the final order of the Board. Carnation appealed to superior court.

Before trial, Carnation successfully moved to exclude the polygraph evidence. The court also granted Ms. Hill's request that exhibits 1, 2, and 3 be excluded, despite Carnation's submission of the affidavit of John D. Fairley, the

secretary of the Board of Industrial Insurance Appeals, attesting that the exhibits were part of the official record considered by the appeals board in reaching its decision.

In closing argument, Ms. Hill's counsel argued that her client had been willing to take a polygraph examination. The court denied Carnation's motion for a mistrial and instructed the jury to disregard counsel's reference to the polygraph test. The jury returned a verdict upholding the Board's decision in favor of Ms. Hill. As part of the judgment, the court awarded Ms. Hill $5,850 in attorney fees.

First, did the court err when it excluded the medical records which apparently had been considered by the appeals board in reaching its decision?

■ Carnation contends that Ms. Hill stipulated to the admission of the exhibits before the Board. "Objections to evidence can be considered only upon the specific grounds made before the Board." *Sepich v. Department of Labor & Indus.,* 75 Wn.2d 312, 316, 450 P.2d 940 (1969). The reason for the rule is that if proper objection is made before the Board, the party offering the evidence has the opportunity to obviate the objection or waive it intelligently. If new objections were permitted in the trial court, it would be too late for the opponent to correct or complete the record. *Sepich,* at 317. But here, the record contains the November 14, 1984, letter by Ms. Hill's counsel to the industrial appeals judge objecting to admission of the exhibits on grounds of prejudice and relevancy.

Carnation also argues that Ms. Hill waived any objection to the exhibits by not petitioning for review of the Board's decision. However, in *Homemakers Upjohn v. Russell,* 33 Wn. App. 777, 781, 658 P.2d 27 (1983), the court interpreted the applicable statutes as meaning that a person *aggrieved* by a Board decision must file a petition for review or waive objections and irregularities. "If a party who is satisfied with the hearing examiner's proposal does not petition, he has waived nothing." *Homemakers,* at 781. "'In the event such petition for review is filed, the failure of any party not aggrieved by the proposed decision and order

to file a petition for review shall not be deemed a waiver by such party of any objections or irregularities disclosed by the record.'" *Homemakers,* at 782 (quoting WAC 263-12-145). Since Ms. Hill was not aggrieved by the proposed decision, she did not have to file a petition for review to preserve her objection to the admission of the exhibits.

█ Finally, any error in excluding the exhibits was harmless. As noted above, the expert medical testimony by both Ms. Hill's witness and Carnation's witness indicated that Ms. Hill had suffered from back problems prior to the accident. Thus, the court's exclusion of the exhibits did not prejudice Carnation. *See Rice v. Janovich,* 109 Wn.2d 48, 63, 742 P.2d 1230 (1987). We conclude that the Superior Court did not err when it excluded exhibits 1, 2, and 3.

Second, did the court err in denying Carnation's motion for a mistrial following counsel's reference during closing argument to Ms. Hill's willingness to take a polygraph examination?

In *DeLor v. Symons,* 93 Wash. 231, 232-33, 160 P. 424 (1916), the court held that counsel's statements to the jury which were outside the record were not so prejudicial as to warrant reversal when the trial court had instructed the jury to disregard them and the size of the verdict did not indicate any passion or prejudice on the jury's part. *See also State v. Rice,* 110 Wn.2d 577, 602, 757 P.2d 889 (1988). *State v. Davenport,* 100 Wn.2d 757, 762-63, 675 P.2d 1213 (1984); *Colburn v. Great N. Ry.,* 166 Wash. 200, 209, 6 P.2d 635 (1932).

██ Here, the court instructed the jury to disregard counsel's reference to Ms. Hill's willingness to take a polygraph examination. "A jury is presumed to follow jury instructions and that presumption will prevail until it is overcome by a showing otherwise." *Tennant v. Roys,* 44 Wn. App. 305, 315, 722 P.2d 848 (1986) (citing *In re Metropolitan Seattle,* 67 Wn.2d 923, 930-31, 410 P.2d 790 (1966)). Viewed in the context of the entire record, the isolated remark was not so prejudicial as to warrant a new trial. The trial court did not abuse its discretion in rejecting

Carnation's motion for a mistrial. *Vasquez v. Markin,* 46 Wn. App. 480, 483, 731 P.2d 510 (1986), *review denied,* 108 Wn.2d 1021 (1987).

Third, did the court err when it awarded Ms. Hill costs and attorney fees under RCW 51.52.130?

RCW 51.52.130 provides:

> If, on appeal to the court from the decision and order of the board, said decision and order is reversed or modified and additional relief is granted to a worker or beneficiary, or in cases where a party other than the worker or beneficiary is the appealing party and the worker's or beneficiary's right to relief is sustained by the court, a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court. . . . If the decision and order of the board is reversed or modified and if the accident fund is affected by the litigation then the attorney's fee fixed by the court for services before the court only, and the fees of medical and other witnesses and the costs shall be payable out of the administrative fund of the department. *In the case of self–insured employers, if the decision and order of the board is reversed or modified resulting in additional benefits by the litigation that would be paid from the accident fund if the employer were not self–insured, then the attorney fees fixed by the court for services before the court, only, and the fees of medical and other witnesses and the costs shall be payable directly by the self–insured employer.*

(Italics and underscoring ours.)

The first portion of the statute pertains to the *fixing* of fees by the superior court. It does not authorize the *award* of fees. Its purpose is to prevent the charging of unreasonable attorney fees. *Johnson v. Tradewell Stores, Inc.,* 24 Wn. App. 53, 57, 600 P.2d 583 (1979), *aff'd,* 95 Wn.2d 739, 630 P.2d 441 (1981).

The underscored portion of the statute provides that the fees fixed by the court shall be paid out of the Department's administrative fund "[i]f the decision and order of

the board is reversed or modified . . ." The italicized portion of the statute provides the same benefit to a similarly situated employee of a self–insured employer, *i.e.,* in circumstances in which the "decision and order of the board is reversed or modified . . ." It was added by Laws of 1982, ch. 63, § 23, after the Supreme Court opinion in *Johnson.* *Johnson* had held that the earlier version of the statute violated the equal protection clause. Specifically, it did not provide for the award of attorney fees to employees of self–insured employers in situations in which employees of employers insured by the state accident fund received such an award.

Here, the decision of the Board was not reversed or modified. Thus, RCW 51.52.130 does not provide attorney fees and costs to Ms. Hill. The fact that Carnation is self–insured is irrelevant. In *Simpson Timber Co. v. Smith,* 37 Wn. App. 796, 800, 682 P.2d 969 (1984), the court noted:

> *Pennsylvania Life* [*Ins. Co. v. Department of Empl. Sec.* 97 Wn.2d 412, 645 P.2d 693 (1982)] reiterates the fundamental proposition on which *Trapp* [*v. Department of Labor & Indus.,* 48 Wn.2d 560, 295 P.2d 315 (1956)] and *Harbor Plywood* [*Corp. v. Department of Labor & Indus.,* 48 Wn.2d 553, 295 P.2d 310 (1956)] were based: a party is not entitled to an *award* of attorney's fees under a statute such as RCW 51.52.130 unless the *award*—not merely the *fixing*—of fees is specifically provided for in the statute. That proposition governs this case.

*See also Spring v. Department of Labor & Indus.,* 39 Wn. App. 751, 757, 695 P.2d 612 (1985).[1]

Nevertheless, Ms. Hill contends the award of fees is justified because employees of self–insured employers are treated differently than those of employers insured through the state fund. She points out that self–insured employers may appeal questions of fact while the Department of Labor and Industries may not. RCW 51.52.110. The result

---

[1]Ms. Hill relies on *Deaconess Hosp. v. Hoye,* 30 Wn. App. 536, 635 P.2d 1095 (1981). *Deaconess* is distinguishable. There, the court did not consider the statute's limitation on fee awards to cases in which the Board's decision is reversed or modified.

is that employees of self–insured employers are subject to the appellate process more often than their counterparts in the state system.[2] We are not persuaded by this argument.

The difference in treatment asserted is that the self–insured employer has a broader right of appeal. But this difference does not flow from the attorney fee statute. Rather, the statutory provision for the award of attorney fees treats both types of employees the same. The Department is free to appeal questions of law and, if it loses the appeal, is not subject to an award of attorney fees unless the appellate court also increases the award to the employee. In order effectively to have raised an equal protection issue here, Ms. Hill would have had to object to the filing of the appeal itself.

The position advocated by Ms. Hill has not been approved by the Legislature. Since attorney fees in these types of appeals are a creature of statute, we would be infringing on the province of the Legislature if we were to award fees here. This we decline to do.

The portion of the judgment upholding the finding of the Board of Industrial Insurance Appeals is affirmed. The portion of the judgment awarding Ms. Hill attorney fees on appeal is reversed. Our holdings make it unnecessary for us to address Ms. Hill's cross appeal.

GREEN, J., concurs.

MUNSON, J. (dissenting)—I dissent. While I concur in that portion of the majority opinion dealing with exclusion of exhibits and denial of mistrial, I dissent to finding error in awarding Ms. Hill attorney fees on appeal.

---

[2]Carnation counters that under RCW 51.52.110, an employer insured by the state fund who is aggrieved by a Board decision may appeal a question of fact. But the significant comparison here is between the self–insured employer and the Department. The interests of these latter two entities are similar, *i.e.,* they will have to pay if the claimant's position is upheld. An employer insured by the state fund is less likely to appeal because it has less at stake. While its industrial insurance premiums may go up following a successful claim, it is not liable for the award itself.

Ms. Hill successfully challenged the initial denial of her claim for workers' compensation benefits at the Board level. Her sole misfortune was to succeed too soon in the appellate process. Thereafter, she had to defend her right to coverage in the superior and appellate courts. Yet because her initial appeal before the Board was successful rather than adverse, her subsequent successes in defending her right to benefits are statutorily meaningless, at least in regard to award of attorney fees. This reality is due solely to a legislative glitch, which this court should acknowledge and correct.

As the majority appropriately acknowledges, RCW 51.52-.130 provides for the assessment of attorney fees against a self–insured employer when the Board decision adverse to the injured worker is "reversed or modified." However, the statutory language leaves a significant gap into which injured workers like Ms. Hill must fall when appeals to denial of benefits are resolved in their favor at the Board level. A literal reading of the statute sweeps aside injured workers with procedural histories parallel to Ms. Hill's. The result is an inequitable "Catch–22" in which a small class of injured workers, though blessed with an established right to benefits, are forced to repeatedly defend their positions at additional, nonreimbursable expense or be subject to loss of those rights. *See Aquarian Found. v. KTVW, Inc.,* 11 Wn. App. 476, 523 P.2d 969 (1974) (failure to appear and defend, *i.e.,* file a brief, may constitute default on appeal).

As early as 1956, courts began acknowledging the additional burden placed upon an injured worker forced to defend her right to recovery. *Harbor Plywood Corp. v. Department of Labor & Indus.,* 48 Wn.2d 553, 560, 295 P.2d 310 (1956); *see also Trapp v. Department of Labor & Indus.,* 48 Wn.2d 560, 295 P.2d 315 (1956) (involving appeal by Department via writ of certiorari following successful defense of right to benefits by injured worker at trial and appellate level). Although the court recognized the apparent inequity in the statutory structure, the courts deemed it proper to defer to the Legislature for correction:

Why the employer in the *Harbor Plywood* case, *supra,* or the department in the present case, should not be required to pay the claimant a reasonable attorney's fee, is far from clear; however, the statute we are called upon to construe *is* clear. The arguments which have been advanced in behalf of the widow in the *Harbor Plywood* case and by Mr. Trapp in the present case must of necessity be directed to the legislature.

*Trapp,* at 562.

In *Johnson v. Tradewell Stores, Inc.,* 95 Wn.2d 739, 630 P.2d 441 (1981), the court was again confronted with a similar issue. It sought to correct a legislative oversight which allowed the award of attorney fees against the state fund when an injured worker successfully appeals to the superior court level, yet failed to provide such fees when the employer was self–insured.[3] The court based its decision on an equal protection rationale, indicating that attorney and witness fees benefit the injured worker by increasing pro tanto the actual amount of workers' compensation benefits received. By awarding attorney fees to some injured workers and not others, based solely on the status of the employer, the statute inappropriately provides disparate treatment, which results in some workers receiving fewer benefits.

Following the lead provided by *Johnson,* this court in *Deaconess Hosp. v. Hoye,* 30 Wn. App. 536, 635 P.2d 1095 (1981) used an equal protection analysis to provide attorney fees to the injured worker. *Deaconess* contained an identical procedural history to the case at bar. There, the worker's claim was rejected by both the self–insured

---

[3]*Johnson* was a consolidated appeal by two injured workers who worked for self–insured employers. One worker's claim was denied by the Department; the Board reversed, yet the worker still appealed to superior court and was successful in acquiring an increased award. The court authorized attorney and medical witness fees. The second worker's claim was accepted and benefits awarded; the Board affirmed. On appeal to the superior court, she received an increased award but attorney and witness fees were denied. At that time, RCW 51.52.130 allowed attorney fees only if the state fund was reversed or modified; it was silent as to the award of fees when the employer was self–insured.

employer and the Department. The injured worker success-
fully appealed to the Board, which reversed the Depart-
ment and allowed the claim. Upon appeal to the superior
court, the Board decision was affirmed and attorney and
witness fees awarded. Notably, the award of fees was
granted despite the absence of reversal or modification of
the Board decision.

In 1982, the Legislature amended RCW 51.52.130, appar-
ently in response to the *Johnson* and *Deaconess* cases. The
result was specific language attempting to correct the equal
protection problem outlined in *Johnson*:

> In the case of self–insured employers, if the decision and
> order of the board is reversed or modified resulting in
> additional benefits by the litigation that would be paid
> from the accident fund if the employer were not self–
> insured, then the attorney fees fixed by the court for ser-
> vices before the court, only, . . . and the costs shall be
> payable directly by the self–insured employer.

RCW 51.52.130.

While the 1982 amendment was sufficient to correct a
portion of the inequity present in the former statute, spe-
cifically the payment of fees regardless of whether the cov-
erage is provided through the state fund or a self–insured
employer when the Board decision is "reversed" or "modi-
fied", its range was insufficient to assist those workers, like
Ms. Hill, who establish a right to benefits prior to the
superior court appeal. This legislative gap provides a sig-
nificant added level of protection for self–insured employ-
ers. It allows them to unsuccessfully appeal the allowance
of a claim through two and possibly three appellate courts
without being subject to payment of the injured worker's
attorney fees.

Subsequent to the 1982 amendment, Washington courts
have adopted a conservative approach to the statutory lan-
guage of RCW 51.52.130 by undertaking a strictly literal
interpretation. *See Spring v. Department of Labor &
Indus.*, 39 Wn. App. 751, 757, 695 P.2d 612 (1985) (literal
reading of *Harbor Plywood* and *Trapp* require denial of

attorney fees); *Siegrist v. Simpson Timber Co.,* 39 Wn. App. 500, 504, 694 P.2d 1110 (assessment of fees against self–insured employer on appeal from superior court is not provided for by statute), *review denied,* 103 Wn.2d 1037 (1985); *Simpson Timber Co. v. Smith,* 37 Wn. App. 796, 682 P.2d 969 (1984) (statute provides for fees only where the Board is reversed or modified). This narrow perspective has produced a judicial position which is, at least in regard to attorney fees, oblivious to the needs and rights of a certain class of injured workers.

A general premise from which all inquiries in this area begin is the legislative directive that the workers' compensation act is to be liberally construed in favor of the injured worker "for the purpose of reducing to a minimum the suffering and economic loss arising from injuries . . . occurring in the course of employment." RCW 51.12.010. As noted in *Trapp,* at 561 (citing RCW 51.04.010):

> The modest awards provided by that act are based, in part, upon the proposition that all questions of fault are eliminated and litigation is unnecessary to secure the "sure and certain relief" which the act is intended to provide for [injured workers].

Upon this general premise rests the further consideration that statutes are to be interpreted pursuant to the spirit of the act:

> Statutes should receive a sensible construction, such as will effect the legislative intention, and, if possible, so as to avoid unjust or absurd consequences. *State ex rel. Thorp v. Devin,* 26 Wn.2d 333, 173 P.2d 994 (1946). A thing which is within the object, purpose and spirit of an enactment is as much within the act as if it were within the letter. *In re Estates of Donnelly,* 81 Wn.2d 430, 502 P.2d 1163, 60 A.L.R.3d 620 (1972).

*Johnson,* at 743 (quoting *Whitehead v. Department of Social & Health Servs.,* 92 Wn.2d 265, 269, 595 P.2d 926 (1979)).

Given these fundamental principles established at the inception of the workers' compensation legislation, I find difficulty in holding the act requires denial of attorney fees

here. It clearly allows for the assessment of attorney fees against the self–insured employer when the injured worker prevails at the superior court level in an appeal from an adverse Board determination. It is illogical to deny the same worker attorney fees due solely to her "misfortune" of winning her appeal too soon, particularly when the appeal to superior court is de novo on the record below. As such, even if the injured worker recognized the benefit of initially losing at the Board level, her need to build an adequate record for the de novo review process would discourage such efforts. Consequently, a broader reading of RCW 51.52.130 mandates affirmance of attorney fees.

Additionally, I find more convincing than my brethren the equal protection argument raised by Ms. Hill. *Johnson,* at 745, recognized that worker classifications based on the coverage status of employers establishes the potential for violation of the equal protection clause:

> At no place in the [workers' compensation] statute is there any suggestion that employees who are employed by self-insurers are somehow to receive fewer benefits than those employees whose employers are under the state system. . . . It is a manifest injustice of the most egregious nature, and we hold it to be a violation of the equal protection clause of the Fourteenth Amendment and Const. art. 1, § 12 to classify one group of employees so that they receive fewer benefits than similarly situated employees simply because the employer chooses to be self-insured.

The present fact pattern reveals a disparity in benefits between two separate groups of workers: (1) those covered under the state fund, and (2) those whose coverage is provided by self–insured employers. This disparity surfaces in the nature of the right to appeal. As Ms. Hill notes, the Department is legislatively limited in the appeal process. Once a Board decision has been made, it may only appeal to the superior court on "questions of law or mandatory administrative actions of the director". RCW 51.52.110. Here, neither is applicable. Accordingly, had Ms. Hill been covered by the state fund system rather than by a self–

insured employer, the appeals to both the superior court and this court would not have occurred. Her success in establishing her right to benefits at the Board level would have ended the litigation process, thus halting the accumulation of further attorney fees.

The central issue on appeal is whether the Board's decision in finding Ms. Hill suffered an industrial injury was appropriate, *i.e.,* a *factual* determination. The self–insured employer can and has appealed that determination. Thus, since Ms. Hill had the misfortune of working for a self–insured employer, a coverage status over which she has no control, she has been forced to appear to defend her award. Given the rationale of *Aquarian Found. v. KTVW, Inc., supra,* she had little choice. By so doing, she has been subject to additional attorney fees, even when she has prevailed at all stages of the appellate procedure to date. The Department and self–insurer should be on an equal footing. The self–insurer should have no greater right of appeal than the Department. Likewise, the contrary is true, *i.e.,* if a self–insurer can appeal factual issues, the Department should be able to do so. If the *Johnson* rationale was valid at the time of its decision, it is valid on this ground as well. This manifest injustice mandates correction.

The workers' compensation act is a compromise of legislation between representatives of business and labor. In exchange for certain concessions, each side acquired a reasonable and fair system of compensation designed to avoid the delay and frequent injustice of civil trials by eliminating the issue of fault, as well as prevent employer exposure to significant civil awards that ultimately are passed on to the general public. *See generally* RCW 51.04.010; *State v. Mountain Timber Co.,* 75 Wash. 581, 135 P. 645 (1913), *aff'd,* 243 U.S. 219 (1917). One of its purposes was to avoid unnecessary litigation and grant sure and certain relief. Unfortunately, this purpose remains clouded in the modern day system where multiple appeals are commonplace. This harsh reality forces injured workers in many instances to defend their right to benefits over what could be years of

litigation. An even harsher reality is that every time an appeal occurs, the injured worker's disability benefits decrease due to the addition of attorney fees. By awarding these fees, we can decrease the economic burden placed upon injured workers like Ms. Hill and at the same time force self-insured employers to rethink their appellate strategy. If forced to pay the injured worker's attorney fees upon unsuccessful litigation, perhaps the employer will reconsider the appeal of questionable cases. Such a ruling would both benefit the system and be consistent with the object and spirit of the act.

Therefore, I would affirm in all respects.

After modification, further reconsideration denied August 9 and 16, 1989.

Review granted at 113 Wn.2d 1028 (1989).