IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30763-8-III |
| | ) | |
| Respondent and | ) | |
| Cross-Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SALVADOR GARCIA SANCHEZ, | ) | |
| | ) | |
| Appellant. | ) | |

KULIK, J. — Salvador Garcia Sanchez appeals his convictions for intimidating a witness, harassment, second degree assault while armed with a deadly weapon, and riot while armed with a deadly weapon. He contends the trial court exceeded its authority in allowing the jury to consider gang aggravator evidence and that trial counsel was ineffective for failing to timely move to bifurcate the gang enhancement from the trial on the substantive offenses. Additionally, he contends the State failed to prove the witness intimidation charge and that the charging documents and "to convict" instructions were constitutionally deficient for failing to include the "true threat" element. In a pro se statement of additional grounds, he contends insufficient evidence supports his

convictions for felony riot and second degree assault. Finally, the State cross appeals the trial court's pretrial dismissal of a gang enhancement. We conclude that all of Mr. Garcia Sanchez's contentions are without merit and accordingly affirm the trial court.

## FACTS

The charges in this case arose from four incidents that occurred over a six-month period. The first incident occurred on October 31, 2010, when Salvador Garcia Sanchez, Jose Nieves, Eduardo Cruz, and Luis Enrique Flores Martinez attended a Halloween party in Othello, Washington. Around 11:00 p.m., the four men left together in Mr. Martinez's car to meet up with some young women in Soap Lake. Later, as Mr. Martinez was driving the group back to Othello, a police officer saw him make an illegal U-turn. The police officer attempted to make a traffic stop. However, Mr. Martinez then heard gun shots and saw Mr. Nieves holding a gun. He accelerated and drove down a dead-end street where he stopped the car. Everyone got out of the car and hid for several hours.

The next day, Mr. Martinez went to the police, confessed to the incident, and told them of Mr. Nieves's involvement. After the identification of Mr. Nieves as the shooter, police went to his mother's house and arrested him. The State filed seven felony charges against him.

About two months later, Mr. Martinez and a friend were driving around Royal City. Mr. Garcia Sanchez saw them and ran into the middle of the street to stop them. They slowed down and Mr. Garcia Sanchez ran to the passenger side of the car where Mr. Martinez was sitting and unsuccessfully tried to open the door. He then attempted to break the window, called Mr. Martinez "a snitch," and threatened to kill him. Report of Proceedings (RP) at 351. Mr. Martinez and his friend were able to drive away. About 30 minutes later, Mr. Martinez saw Mr. Garcia Sanchez again as they continued their drive through town. When Mr. Garcia Sanchez saw them, he threw rocks at their car.

On January 14, 2011, Ricardo Coria and his son Mario went to Mr. Coria's nephew's house in Royal City. At some point, he walked out to his car to recharge his telephone battery. He then saw a group of five or six men walking toward him, including Mr. Garcia Sanchez. Mr. Coria stood between the approaching men and his nephew's house. Mr. Garcia Sanchez then walked up to him and said something about the "south side" and some of the men in the group flashed gang signs. RP at 799. As Mr. Coria looked back at the house to tell his son to go back in the house, he felt something metallic hit him on his forehead. He fell to the ground and Mr. Garcia Sanchez hit him four or five times on the head with the metal object. Mr. Coria's son came out of the house and

3

pushed Mr. Garcia Sanchez off his father. A group fight ensued. The group dispersed when police arrived.

A few months later, Mr. Coria was talking on his telephone in his car in a parking lot. After a few minutes, he noticed a group of four young men, including Mr. Garcia Sanchez, standing about 100 yards away, staring at him and throwing gang signs. The men called out to Mr. Coria to get out of the car, but he ignored them. The men approached his car, knocked on his window, and began calling him a "northerner." RP at 804. He rolled down his window and the men urged him to get out and fight. Mr. Garcia Sanchez then reached through the window and hit Mr. Coria on the head a few times with his fist. Mr. Coria had bruises on his head, but was not seriously hurt. The men ran away when police arrived.

The State charged Salvador Garcia Sanchez with witness intimidation, felony harassment, two counts of first degree assault with deadly weapon enhancements, and two counts of riot with deadly weapon enhancements.[1] It also alleged that the crimes were committed to benefit a street gang under RCW 9.94A.535(3)(aa) and to advance gang standing under RCW 9.94A.535(3)(s). Before trial, the court granted Mr. Garcia

---

[1] The State also charged Mr. Garcia Sanchez with bail jumping, but that is not at issue in this appeal.

4

Sanchez's motion to sever the witness intimidation and felony harassment charges from the other charges. Two separate jury trials followed.

Mr. Garcia Sanchez also filed a *Knapstad*[2] motion to dismiss the gang aggravators under RCW 9.94A.535(3)(s) and RCW 9.94A.535(3)(aa). He argued in part that the State could not produce evidence that he was motivated to advance his gang status. The court granted his motion as to the aggravator alleged under RCW 9.94A.535(3)(s), finding there was "no evidence beyond speculation regarding an intent of the defendant to enhance his status within his gang, a status which, according to the state, he already occupied prior to the first of the incidents that is charged, with the incarceration of Mr. Nieves." RP at 34.

At the first trial, the State's theory was that Mr. Garcia Sanchez threatened Mr. Martinez to benefit his gang by discouraging Mr. Martinez from testifying against Mr. Nieves, the jailed leader of the gang. Mr. Martinez testified as detailed above. He explained that he hung out with the "South Side Locos" (SSL) gang and that he believed Mr. Garcia Sanchez had threatened to kill him because he had reported Mr. Nieves to the police. Mr. Martinez believed that if Mr. Garcia Sanchez had been able to open the car door, he would have tried to kill him.

---

[2] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

5

Deputy Ryan Rectenwald, a police officer with the Grant County Sheriff's Office,

testified that he was assigned to investigate the Halloween 2010 incident. He stated that

Mr. Martinez gave him the information that provided the basis for the search warrant for

Mr. Nieves's home and eventually led to Mr. Nieves's arrest. He further testified that he

included Mr. Martinez's name in the probable cause statement and police report and that

"[d]efendants always read my reports if they're charged with a crime." RP at 143.

To establish the gang enhancement under RCW 9.94A.535(3)(aa),[3] the State

presented witnesses to testify about the characteristics of criminal street gangs. Officer

Korey Judkins, a gang intelligence officer for the Royal City Police Department, testified

that he had had anywhere from 15 to 20 contacts with Mr. Garcia Sanchez. He testified

that on January 14, 2011, he received a call about a fight in progress. When he arrived at

the scene, he saw Mr. Garcia Sanchez with known SSL gang members running from the

yard of a rival gang member. Mr. Garcia Sanchez had a bloody face. Officer Judkins

also testified that he witnessed Mr. Garcia Sanchez and other SSL members burning a

blue bandana in August 2010. When he asked Mr. Garcia Sanchez why they were

burning the bandana, Mr. Garcia Sanchez told him that the bandana had fallen on the

---

[3] RCW 9.94A.535(3)(aa) provides: "The defendant committed the offense with the intent to directly or indirectly cause any benefit, aggrandizement, gain, profit, or other advantage to or for a criminal street gang as defined in RCW 9.94A.030, its reputation,

6

ground and it would "disrespect . . . their colors" if they did not burn it. RP at 203.

Officer Judkins also testified that in August 2010, police discovered a large amount of

graffiti on police department buildings and other buildings around town. A security video

showed SSL gang members spray painting graffiti on the side of one of the police

department buildings. The court admitted numerous photographs of the graffiti.

Deputy Joe Harris testified as an expert on street gangs. He explained that people

join gangs for a number of reasons, including socioeconomic reasons, a need for

protection and community, and a need for respect. Deputy Harris testified that in gang

culture "respect equates to fear. If you fear me, then you will respect me." RP at 297.

According to Deputy Harris, gang members gain respect by "putting in work," which he

explained meant "committing crimes to the benefit of the gang, doing things like

residential burglaries or vehicle prowls to steal pawnable items that the gang can then go

pawn and make money." RP at 298. He elaborated that "putting in work" could also

include drive-by shootings, selling drugs, and beating up a rival gang member. RP at 298.

Deputy Harris also explained that gang members identify themselves by wearing

certain colors, tattoos, and using hand signals. According to Deputy Harris, the number

13 is indicative of the SSL gang. He explained, "[t]he 13 represents the letter M in the

influence, or membership."

7

alphabet, it's the 13th letter of the alphabet, the letter M then represents the Mexican mafia which would be kind of the overseer of Sureno gangs." RP at 301. He also explained that a "NK" tattoo on Mr. Garcia Sanchez's leg signified "Norteno killer" and is a very common tattoo among Hispanic street gangs. RP at 302. Deputy Harris also testified that gang members view "snitches" as "[t]he lowest form of existence on the planet." RP at 308.

The State then admitted numerous exhibits depicting Mr. Garcia Sanchez's tattoos, which included the number 13, and dots on another SSL gang member's hands that allegedly represented the number 13. The State also admitted a video that showed a September 2010 fight at a high school between Mr. Garcia Sanchez and his gang members and a rival gang member. The State presented evidence that SSL gang members had a history of criminal activity, including a juvenile court disposition for fourth degree assault for Jesus Torres, a SSL gang member, an information for Eric Haro, another SSL member, alleging riot and fourth degree assault, and an information charging Mr. Nieves with second degree assault.

The jury returned guilty verdicts on the intimidating a witness charge and the nonfelony harassment charge and answered "yes" on the special verdict form as to the gang aggravator.

8

During the second trial, Mr. Coria testified as detailed above. Eyewitnesses to the January 14, 2011 incident corroborated Mr. Coria's testimony. His son, Mario Ricardo Coria, testified that he saw Mr. Garcia Sanchez, accompanied by four other "south siders," approach his father, and then hit him with brass knuckles, knocking his father to the ground. RP at 680, 682-83. He stated that Mr. Garcia Sanchez then approached him with the brass knuckles and "started swinging." RP at 684. Victor Bahena, Mr. Coria's nephew, and Jesus Valentin, both testified that a group of "south siders" approached Mr. Coria and that Mr. Garcia Sanchez hit Mr. Coria on the head several times. RP at 714, 756. They stated that when they intervened to help, the other "south siders" started attacking them. The fighting lasted until police arrived, at which point the SSL gang members left.

Officer Reynaldo Rodriguez corroborated Mr. Coria's testimony regarding the second incident. He testified that on May 14, 2011, he saw Mr. Garcia Sanchez walking across a street in Royal City with three other males. He testified that two of the males were affiliated with the SSL street gang. Shortly thereafter, Officer Rodriguez saw the males "jumping and punching" into Mr. Coria's vehicle. RP at 163.

As at the first trial, Deputy Harris testified about gang culture. He opined that the January and May incidents were gang related because the actors were gang members,

9

used gang slurs, wore gang attire, and were members of rival gangs with a history between them. He also believed the May and January assaults were related, explaining "[r]etaliation is a huge motivator in gang-related crime." RP at 965.

Over repeated defense objections, Officer Judkins recited the extensive criminal histories of SSL members. The court ruled that the evidence was relevant to show the SSL gang qualified as a "criminal street gang" under the statute. RP at 597. However, the court noted the prejudicial nature of the evidence:

> [O]nce a criminal defendant is believed to be a member of a gang, every crime ever committed by any member of that gang is admissible into evidence.
>
> That is so contrary to the notion of a fair trial and so contrary to the principles of Evidence Rule 404 that we don't allow prior bad acts to come into evidence, that it's actually chilling to a trial judge to say, all you have to do to make this allegation is show that the defendant is a member of the gang, and then all of this stuff comes into evidence.

RP at 597-98.

The judge then stated that he would grant a defense motion to bifurcate the trial, explaining, "[This] sentencing enhancement is being used to dump truckloads of otherwise inadmissible evidence into a trial that is supposed to determine guilt or innocence." RP at 599.

The next day, Mr. Garcia Sanchez moved to bifurcate his trial, arguing the jury's consideration of the substantive evidence of his charges should be separated from the

10

evidence supporting the gang aggravator. However, the court denied the motion as untimely, noting "the jury has already heard considerable evidence that in my view would not be admitted absent the gang aggravator." RP at 610-11.

As to the January charges, the jury found Mr. Garcia Sanchez not guilty of first degree assault, but guilty of the lesser included crime of second degree assault. The jury also found Mr. Garcia Sanchez guilty of riot while armed with a deadly weapon. As for the May charges, the jury found Mr. Garcia Sanchez guilty of fourth degree assault and simple riot.

At sentencing, Mr. Garcia Sanchez argued that the court did not have the authority to impose an exceptional sentence because the aggravator at issue, RCW 9.94A.535(3)(aa), is not specifically listed in RCW 9.94A.537(4). The court overruled the objection, concluding it had the statutory authority to submit the aggravator to the jury. However, the court imposed a standard range sentence of 79 months, concluding an exceptional sentence would be excessive in view of Mr. Garcia Sanchez's conduct.

## ANALYSIS

*Aggravating Circumstance Under RCW 9.94A.535(3)(aa).* Mr. Garcia Sanchez argues that the trial court improperly allowed the jury to consider whether he committed

11

the crimes "with the intent to directly or indirectly cause any benefit, aggrandizement, gain, profit, or other advantage to or for a criminal street gang[,] its reputation, influence, or membership" under RCW 9.94A.535(3)(aa). He contends that it was improper because RCW 9.94A.537(4) states that "[e]vidence regarding any facts supporting aggravating circumstances under RCW 9.94A.535(3)(a) through (y) shall be presented to the jury during the trial of the alleged crime," but the aggravating factor at issue here was not listed in (a) through (y).

This contention presents an issue of statutory interpretation that we review de novo. *State v. Christensen*, 153 Wn.2d 186, 194, 102 P.3d 789 (2004). The purpose of statutory interpretation is to discern the legislature's intent. *Id.* To do that, this court looks first at the plain language of the statute. *Id.* If the statute's meaning is plain on its face, then we must give effect to that plain meaning. *State v. Theilken*, 102 Wn.2d 271, 275, 684 P.2d 709 (1984). We discern the plain meaning of a statute from "the ordinary meaning of the language at issue, as well as from the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005).

A trial court may impose an exceptional sentence outside the standard range only if it finds that there are substantial and compelling reasons to do so. RCW 9.94A.535.

12

RCW 9.94A.535(3) sets forth "Aggravating Circumstances – Considered by a Jury – Imposed by the Court." That provision includes "an exclusive list of factors that can support a sentence above the standard range." RCW 9.94A.535(3). And that list includes the aggravating factor at issue here. RCW 9.94A.535(3)(aa).

Our Supreme Court has concluded that "trial courts lack authority during trial to submit special interrogatories to juries in deviation from the [Sentencing Reform Act of 1981, chapter 9.94A RCW (SRA)]'s exceptional sentencing procedures." *State v. Davis*, 163 Wn.2d 606, 611, 184 P.3d 639 (2008). The SRA requires that facts supporting aggravating circumstances should be found "by procedures specified in RCW 9.94A.537." RCW 9.94A.535(3). RCW 9.94A.537(4) provides that "[e]vidence regarding any facts supporting aggravating circumstances under RCW 9.94A.535(3)(a) through (y) shall be presented to the jury during the trial of the alleged crime." Relying on that statute, Mr. Garcia Sanchez contends that the trial court lacked authority to allow the jury to consider the aggravating factor at issue here, which is not listed in (a) through (y).

However, that statute does not address what a jury can and cannot consider. Instead, it addresses whether a jury must consider certain issues at trial or whether it may consider them in a separate proceeding. RCW 9.94A.537(4). It states:

13

Evidence regarding any facts supporting aggravating circumstances under RCW 9.94A.535(3)(a) through (y) *shall be presented to the jury during the trial* of the alleged crime, unless the jury has been impaneled solely for resentencing, or unless the state alleges the aggravating circumstances listed in RCW 9.94A.535(3)(e)(iv), (h)(i), (o), or (t). If one of these aggravating circumstances is alleged, the trial court *may conduct a separate proceeding* if the evidence supporting the aggravating fact is not part of the res geste of the charged crime, if the evidence is not otherwise admissible in trial of the charged crime, and if the court finds that the probative value of the evidence to the aggravated fact is substantially outweighed by its prejudicial effect on the jury's ability to determine guilt or innocence for the underlying crime.

RCW 9.94A.537(4) (emphasis added). While that provision does not clearly state whether a jury is required to consider RCW 9.94A.535(3)(aa) at trial, it does not give or deprive the court of the authority to submit RCW 9.94A.535(3)(aa) to a jury.

RCW 9.94A.535 clearly provides that a jury may consider the aggravating circumstance. The trial court correctly allowed the jury to consider it.

*Ineffective Counsel—Motion to Bifurcate.* Mr. Garcia Sanchez next contends that defense counsel was ineffective for failing to file a timely motion to bifurcate his trial to separate the jury's consideration of the evidence supporting the gang enhancement from that supporting the substantive offenses. He argues that most of the evidence offered in support of the aggravator was not relevant to prove the substantive offenses and was unfairly prejudicial. The State responds there was no reason to bifurcate proceedings

14

because the gang aggravator evidence was admissible during the guilt phase of the trial to prove motive.

Effective assistance of counsel is guaranteed by the federal and state constitutions. U.S. CONST. amend VI; CONST. art. I, § 22. To prevail on his ineffective assistance of counsel claim, Mr. Garcia Sanchez must show that counsel made errors serious enough as to make his performance nonfunctional and that this performance prejudiced the defense enough to deprive him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "Even if a defendant shows that particular errors of counsel were unreasonable, . . . the defendant must show that they actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 693. Courts engage in a strong presumption that counsel's representation was effective. *State v. Brett*, 126 Wn.2d 136, 198, 892 P.2d 29 (1995) (quoting *State v. Thomas*, 109 Wn.2d 22, 226, 743 P.2d 816 (1987)). To rebut this presumption, a defendant bears the burden of establishing the absence of any "conceivable legitimate tactic explaining counsel's performance." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

To establish prejudice, a defendant must show a reasonable probability that the outcome of the trial would have differed absent the deficient performance. *Thomas*, 109 Wn.2d at 226 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The burden is on the defendant to show ineffective assistance based on the trial record. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

The legislature has mandated the procedure for establishing aggravating circumstances. As noted in the preceding section, RCW 9.94A.537(4) provides that "[e]vidence regarding any facts supporting aggravating circumstances . . . shall be presented to the jury during the trial of the alleged crime . . . unless the state alleges the aggravating circumstances listed in RCW 9.94A.535(3)(a)(iv), (h)(i), (o), or (t)." With regard to these listed exceptions, the statute states that the court "*may* conduct a separate proceeding if the evidence supporting the aggravating fact is not part of the res geste of the charged crime, if the evidence is not otherwise admissible in trial of the charged crime, and if the court finds that the probative value of the evidence to the aggravated fact is substantially outweighed by its prejudicial effect on the jury's ability to determine guilt or innocence for the underlying crime." RCW 9.94A.537(4) (emphasis added).

In failing to request bifurcation, trial counsel was simply following the statutorily prescribed procedure for proving aggravating circumstances. However, citing *State v. Monschke*, 133 Wn. App. 313, 334-35, 135 P.3d 566 (2006), Mr. Garcia Sanchez points out that trial courts have discretion to bifurcate trials if the evidence supporting the

16

sentencing enhancement would prejudice the defendant during the guilt phase of the trial, and that the trial court here would have done so had trial counsel filed a timely motion.

Despite the trial court's indication that it would have granted a timely motion to bifurcate, Mr. Garcia Sanchez fails to establish deficient performance. Bifurcation is not necessary when there is overlap between the evidence necessary to establish the aggravating circumstance and the substantive offense. *Id.* at 335.

In *Monschke*, the defendant moved to bifurcate his trial into a murder phase and an aggravating circumstances phase, arguing that bifurcation was necessary to keep the jury from considering his white supremacist beliefs when deliberating on the first degree murder elements. *Id.* at 322. Noting the "current statutes do not provide for bifurcated trials on first degree murder and the alleged aggravating circumstance," the court acknowledged that bifurcated trials may sometimes be necessary. *Id.* at 334. However, it also noted that "[b]ifurcation is inappropriate . . . if there is a substantial overlap between evidence relevant to the proposed separate proceedings." *Id.* at 335. The *Monschke* court ultimately determined that the defendant's white supremacist beliefs were relevant to establish motive and that he intended to cause an "inferior" person's death. *Id.*

Here, there is a substantial overlap between the gang evidence and the evidence relevant to establish the substantive crimes. Evidence that Mr. Garcia Sanchez was a

17

member of a criminal street gang, that gang members exact revenge on "snitches," and that they fight with rival gang members was relevant to motive in both trials. During the first trial, the State introduced evidence that Mr. Garcia Sanchez's attack on Mr. Martinez was motivated by his allegiance to his gang. The relationship between Mr. Garcia Sanchez and Mr. Nieves was central to establishing the State's theory of the case and proving the motive for the attack. Motive was also at issue in the second trial. Mr. Garcia Sanchez's gang membership explained his attacks on Mr. Coria, allegedly a rival gang member.

Thus, in both trials, motive would have been at issue even if the case had been bifurcated. To the extent the evidence supporting the gang enhancement would have been admissible to establish motive during the guilt phase of trial, it was not unreasonable for defense counsel to fail to request bifurcation. Defense counsel's choice was well within the range of professionally competent assistance.

Even if we were to decide that defense counsel's strategy was unreasonable and that he should have moved to bifurcate the trial, Mr. Garcia Sanchez would still have to show prejudice. He argues that even if some of the gang evidence would have been admissible at trial, the most damaging evidence—the evidence of prior, unrelated criminal

acts committed by Mr. Garcia Sanchez and other gang members—would not have been admissible.

Mr. Garcia Sanchez is correct that the evidence of unrelated crimes would generally not be admissible during the guilt phase of a trial. Prior conviction evidence is considered inherently prejudicial because it tends to shift the jury's focus "from the merits of the charge to the defendant's general propensity for criminality." *State v. Jones*, 101 Wn.2d 113, 120, 677 P.2d 131 (1984), *overruled on other grounds by State v. Brown*, 113 Wn.2d 520, 782 P.2d 1013 (1989). Nevertheless, Mr. Garcia Sanchez cannot show that there was a reasonable probability he would have been acquitted absent this evidence.

During the first trial, the State presented uncontroverted evidence that Mr. Martinez had reported Mr. Nieves to police and that Mr. Garcia Sanchez, a member of Mr. Nieves's gang, later called Mr. Martinez a "snitch" and threatened to kill him. There was no evidence suggesting someone else threatened to kill Mr. Martinez. In the second trial, Mr. Coria testified that Mr. Garcia Sanchez, accompanied by other gang members, hit him on the head four or five times with a metallic object, causing Mr. Coria to fall to the ground unconscious. There were multiple eyewitnesses to the attack. The jury acquitted Mr. Garcia Sanchez of first degree assault, finding him guilty of the lesser

19

included crime of second degree assault. This verdict undermines Mr. Garcia Sanchez's assertion that defense counsel's performance adversely affected his trial.

Moreover, in both trials, the trial court gave a limiting instruction that any evidence relating to unlawful acts of Mr. Garcia Sanchez or others on occasions other than the dates of the substantive crimes could only be used in resolving the alleged aggravating circumstance. A jury is presumed to follow the trial court's instructions. *Carnation Co. v. Hill*, 54 Wn. App. 806, 811, 776 P.2d 158 (1989) (quoting *Tennant v. Roys*, 44 Wn. App. 305, 315, 722 P.2d 848 (1986)), *aff'd*, 115 Wn.2d 184, 796 P.2d 416 (1990).

In view of the strength of the State's evidence to support the jury verdicts, Mr. Garcia Sanchez fails to show a reasonable probability that the outcome of the trials would have been different if the evidence of the unrelated criminal acts had been presented at a separate proceeding.

Defense counsel's decision not to request bifurcation of trial was not ineffective assistance. Even assuming that a reasonably professional level of performance would have included this request, Mr. Garcia Sanchez cannot show that there was a reasonable probability of a better outcome if the request had been made.

*Sufficient Evidence—Witness Intimidation.* Mr. Garcia Sanchez next contends that the evidence is insufficient to establish any of the alternative ways to commit witness intimidation because the State failed to prove his specific intent in making the threat. He argues that calling Mr. Martinez a "snitch" and threatening to kill him does not establish that he was attempting to influence Mr. Martinez's testimony, induce him to absent himself from an official proceeding, or withhold evidence relevant to the police investigation. He asserts that, at most, the evidence shows that he was angry with Mr. Martinez for reporting Mr. Nieves to police. The State responds that the evidence was sufficient to support a reasonable inference that Mr. Garcia Sanchez intended to induce Mr. Martinez's absence from future proceedings, even though Mr. Garcia Sanchez did not explicitly make a statement to that effect.

We review a defendant's challenge to the sufficiency of the evidence by asking whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Finch*, 137 Wn.2d 792, 831, 975 P.2d 967 (1999) (quoting *State v. Pirtle*, 127 Wn.2d 628, 643, 904 P.2d 245 (1995)). In answering this question, we view the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. *State v. Gregory*, 158 Wn.2d 759, 817, 147 P.3d 1201 (2006) (quoting *State v. Clark*, 143 Wn.2d 731, 769, 24 P.3d 1006 (2001)). We consider

21

No. 30763-8-III
*State v. Garcia Sanchez*

circumstantial and direct evidence equally reliable. *State v. Thomas*, 150 Wn.2d 821,

874, 83 P.3d 970 (2004).

Here, the court instructed the jury that to convict Mr. Garcia Sanchez of

intimidating a witness, it had to prove that "by use of a threat against a current or

prospective witness [Mr. Garcia Sanchez] attempted to:"

(a)     influence the testimony of that person; or
(b)     induce that person to absent himself from an official proceeding; or
(c)     induce that person not to report the information relevant to a criminal
        investigation; or
(d)     induce that person not to give truthful or complete information.

Clerk's Papers (CP) at 97.

The State provided evidence that Mr. Martinez went to police and informed them

about Mr. Nieves's involvement in a shooting. Officer Rodriguez testified that based on

that information, he obtained a search warrant for Mr. Nieves's home. He also testified

that Mr. Martinez was named in the police report and certificate of probable cause in Mr.

Nieves's case. There was evidence that Mr. Nieves's defense counsel had the police

report and that criminal charges resulted from the incident. Moreover, the State

established that Mr. Nieves and Mr. Garcia Sanchez were members of the same gang and

that about two months after Mr. Martinez reported Mr. Nieves to police, Mr. Garcia

Sanchez approached Mr. Martinez in a car, tried to break a window, called him a

22

"snitch," and threatened to kill him, all in the context of Mr. Nieves's pending criminal charge.

Under these circumstances, the trier of fact could infer that Mr. Garcia Sanchez intended to intimidate Mr. Martinez from testifying against Mr. Nieves. In considering charges of intimidating a witness, jurors must ascertain the inferential meaning of statements alleged to be threats, because the literal meaning of words is not necessarily the intended communication. *State v. Gill*, 103 Wn. App. 435, 445, 13 P.3d 646 (2000) (quoting *State v. Scherck*, 9 Wn. App. 792, 794, 514 P.2d 1393 (1973)). Considering the evidence in the light most favorable to the State and drawing all reasonable inferences in the State's favor, the evidence was sufficient to support the conviction for intimidation of a witness.

Sufficient evidence supports Mr. Garcia Sanchez's conviction for intimidation of a witness.

*Charging Documents and "To Convict" Instructions.* For the first time on appeal, Mr. Garcia Sanchez argues that (1) a "true threat" is an essential element of felony harassment and witness intimidation, and (2) the respective charging documents and "to convict" instructions were constitutionally deficient because they did include this

23

essential element of the offense. Mr. Garcia Sanchez fails to meet the RAP 2.5(a)(3) exception for our consideration of this unpreserved issue for the first time on appeal.

Generally, we do not review issues raised for the first time on appeal unless the issue involves a "manifest error affecting a constitutional right." RAP 2.5(a)(3). Under this standard, the defendant has the initial burden of showing that the error was of constitutional magnitude and manifest. *State v. Grimes*, 165 Wn. App. 172, 185-86, 267 P.3d 454 (2011), *review denied*, 175 Wn.2d 1010, 287 P.3d 594 (2012). If the defendant can show that a claim raises a manifest constitutional error, then the burden shifts to the State to prove that the error was harmless. *Id.* at 186.

Both the United States and Washington Constitutions require that all "essential elements" of a crime be pleaded in the information and proved beyond a reasonable doubt. *State v. Allen*, 176 Wn.2d 611, 627 n.10, 294 P.3d 679 (2013). The trial court's "to convict" instruction must also contain all the essential elements of the offense, and its failure to do so constitutes "automatic reversible error." *State v. Smith*, 131 Wn.2d 258, 263, 265, 930 P.2d 917 (1997).

After Mr. Garcia Sanchez filed his opening brief, the Washington Supreme Court decided the issue before us and rejected Mr. Garcia Sanchez's argument, holding that the definition of a true threat is not an essential element that needs to be included in an

information or to convict instruction. *Allen,* 176 Wn.2d at 629-30. The court clarified that the constitutional concept of a "true threat" is merely definitional and is "not itself an essential element of the crime." *Id.* at 630 (quoting *State v. Tellez,* 141 Wn. App. 479, 484, 170 P.3d 75 (2007)). It also explained that because the true threat requirement is merely definitional, it is not error if the true threat requirement is not included in the information or "to convict" instruction "so long as the jury [is] instructed as to the true threat requirement." *Id.* In *Allen,* because the jury received a separate instruction explaining the true threat requirement, the court held that the defendant's First Amendment rights were protected and he failed to demonstrate that a "manifest error affecting a constitutional right" had occurred. *Id.*

*Allen* is dispositive here. While the charging documents and "to convict" instructions for the felony harassment and witness intimidation charges did not mention the true threat requirement, the trial court gave the jury a separate instruction, identical to the one given in *Allen.* This instruction read, in part:

> To be a threat, a statement or act must occur in a context or under such circumstances where a reasonable person, in the position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in jest or idle talk.

CP at 98.

25

Because the jury instruction included a separate instruction explaining the "true threat" requirement, the instructions as a whole were sufficient.

In view of *Allen*, no constitutional error occurred warranting our review for an unpreserved alleged error under RAP 2.5(a)(3).

*Statement of Additional Grounds (SAG) Issues.* In his pro se statement of additional grounds, Mr. Garcia Sanchez first contends insufficient evidence supports his conviction for felony riot because the State failed to prove that he was armed with a deadly weapon. Evidence is sufficient to support a verdict if the trier of fact has a factual basis for finding each element of the offense beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980).

The riot statute provides:

> A person is guilty of the crime of riot if, acting with three or more persons, he or she knowingly and unlawfully uses or threatens to use force, or in any way participates in the use of such force, against any other person or against property.

RCW 9A.84.010(1).

Guilt for riot is predicated on group conduct: " '[a] person . . . acting with three or more other persons.' " *State v. Montejano*, 147 Wn. App. 696, 700, 196 P.3d 1083 (2008) (quoting RCW 9A.84.010(1)). The crime of riot becomes a felony if "the actor is armed with a deadly weapon." RCW 9A.84.010(2)(b). The *Montejano* court clarified that for

26

the commission of felony riot, "the accused must be the one with the deadly weapon."

*Montejano*, 147 Wn. App. at 700. Here, the evidence at trial established that Mr. Garcia

Sanchez approached Mr. Coria with a group of five or six other young men. Mr. Coria's

son testified that Mr. Garcia Sanchez was holding brass knuckles when he attacked Mr.

Coria. And Mr. Coria testified that Mr. Garcia Sanchez hit him several times with brass

knuckles. The evidence was sufficient to convict Mr. Garcia Sanchez of felony riot.

Mr. Garcia Sanchez next contends the evidence was insufficient to establish

second degree assault because there was no evidence that Mr. Coria suffered "substantial

bodily harm," as required under RCW 9A.36.021(1)(a). He argues, "[n]owhere in any

police report, nor in Ricardo Coria Lara's testimony does it refer [t]o or relate to any

fracture [or] loss of impairment of any bodily organ." SAG at 3.

Mr. Garcia Sanchez overlooks the fact that the second degree assault charge was a

lesser included of count three, which alleged that Mr. Garcia Sanchez or an accomplice,

with intent to cause great harm, assaulted Mr. Coria with a deadly weapon. In order to

prove that Mr. Garcia Sanchez committed the crime of second degree assault, the State

was required to prove that he assaulted the victim "with a deadly weapon."

RCW 9A.36.021(1)(c). The jury was instructed that to convict Mr. Garcia Sanchez of the

lesser included offense it had to find beyond a reasonable doubt that "the defendant or an

accomplice assaulted Ricardo Coria Lara with a deadly weapon." CP at 154. As just

detailed, there was sufficient evidence that Mr. Garcia Sanchez assaulted Mr. Coria with

a deadly weapon.

Sufficient evidence supports Mr. Garcia Sanchez's convictions for felony riot and

second degree assault.

*State's Cross Appeal*—Knapstad *Motion.* In its cross appeal, the State contends

that the trial court erred in granting the defense's *Knapstad* motion to dismiss the gang

aggravator under RCW 9.94A.535(3)(s). It argues that sufficient evidence established

that Mr. Garcia Sanchez committed the offenses to advance his position in the gang. Mr.

Garcia Sanchez counters that any error was harmless because the trial court would not

have imposed an exceptional sentence even if the aggravator had been presented to the

jury.

RCW 9.94A.535(3)(s) allows for an exceptional sentence when "[t]he defendant

committed the offense to obtain or maintain his or her membership or to advance his or

her position in the hierarchy of an organization, association, or identifiable group." Here,

the trial court dismissed this aggravator pursuant to a pretrial *Knapstad* motion,

concluding there was no evidence of the defendant's intent to advance his gang status.

Under *Knapstad*, a trial court may grant a pretrial motion to dismiss a criminal charge if there are no disputed facts and the undisputed facts are insufficient to support a finding of guilt. *State v. Knapstad*, 107 Wn.2d 346, 356, 729 P.2d 48 (1986). However, it is well settled that the trial court "'shall not dismiss a sentence enhancement or aggravating circumstance unless the underlying charge is subject to dismissal under this section.'" *State v. Meacham*, 154 Wn. App. 467, 473-74, 225 P.3d 472 (2010) (quoting CrR 8.3(c)(3)). The *Meacham* court explained that "CrR 8.3(c)(3) permits a defendant to move to dismiss an 'aggravating circumstance' allegation, but only when the underlying charge is also subject to dismissal. The court may not separate the aggravating circumstances from the underlying charge." *Id.* at 474.

Here, in the absence of a motion to dismiss the underlying charges, the trial court did not have the authority to separately dismiss the special gang allegation pursuant to a *Knapstad* motion. Nevertheless, any error was harmless. As Mr. Garcia Sanchez points out, it is unlikely the trial court would have imposed an exceptional sentence even if the gang aggravator had been submitted to the jury and the jury had answered "yes." As detailed above, the State presented extensive gang-related evidence at trial and the jury answered "yes" on the special verdict form related to the "status" gang aggravator under RCW 9.94A.535(3)(s). Despite this evidence, the court imposed a standard range

sentence, finding an exceptional sentence would be "excessive in light of [Mr. Garcia Sanchez's] conduct." RP (April 3, 2012) at 75. Nothing in the record suggests the court would have changed its opinion about the seriousness of the crimes even if the State had been allowed to submit the "status" aggravator to the jury.

Any error in dismissing the gang aggravator under RCW 9.94A.535(3)(s) was harmless.

We affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Kulik, J.

WE CONCUR:

_____        _____
Brown, J.                                Korsmo, C.J.