[No. 10269-9-I.   Division One.   July 19, 1984.]

WILLIAM S. YOUNG, ET AL, *Appellants*, v. ALLEN
W. CARTER, ET AL, *Respondents*.

*Kafer, Good, St. Mary & Mitchell* and *Randall L. St. Mary*, for appellants.

*Anderson, Hunter, Dewell, Baker & Collins, Bradford N. Cattle,* and *James P. Hunter*, for respondents.

DURHAM, C.J.—William Young, plaintiff below, was injured when his bicycle was struck by a van driven by Theda Carter. Young appeals from a jury verdict for Carter, claiming that the trial court improperly instructed the jury.

On September 9, 1977, William Young, then age 11, was riding his bicycle in a crosswalk when he was struck. The accident occurred in the late afternoon at a busy 4–way–stop intersection. Young, a paper boy, had picked up a load of newspapers from storage bins near the intersection. He

rode his bicycle off the curb and started across the street in the crosswalk. Carter, who had stopped at the opposite side of the intersection, drove through it and struck Young with the left front corner of her ¾–ton passenger van. Young was thrown to the pavement, and suffered a concussion and severe facial lacerations. He and his parents brought suit against Carter and her husband.

At trial, there was testimony that Young had difficulty keeping his balance after jumping the curb, and did not see the van until just before it hit him. There was also testimony that Carter was watching other vehicles as she drove through the intersection, and did not see anyone in the crosswalk. The jury returned a special verdict which found no negligence on the part of Carter. Young appeals.

Young assigns error to the trial court's refusal to give his proposed instruction regarding the "duty to see." The proposed instruction reads: "Every person has a duty to see what would be seen by a person exercising ordinary care." WPI 12.06. The trial court did issue a general negligence instruction:

> Negligence is the failure to exercise ordinary care. It is the doing of some act which a reasonably careful person would not do under the same or similar circumstances or the failure to do something which a reasonably careful person would have done under the same or similar circumstances.
>
> Ordinary care means the care a reasonably careful person would exercise under the same or similar circumstances.

Instruction 2 (WPI 10.01, 10.02). The court also issued an instruction regarding the plaintiff Young's duty of care:

> It was the legal duty of the plaintiff, WILLIAM S. YOUNG, to exercise reasonable care, at all times, for his own safety and protection and to keep a reasonable lookout ahead and see all vehicles that were there to be seen.

Instruction 8.

Young first argues that the trial court's failure to issue his proposed "duty to see" instruction prevented him from arguing his theory of the case. We find this contention

unconvincing.

■ As is clear from Young's closing argument, his theory was that Carter's failure to see the boy in the crosswalk was negligence:

> She had a clear, unobstructed view of this whole area. She did not see what was there before her to be seen; namely, Bill Young on his bicycle proceeding across the crosswalk. . . . And her failure to see is and was the proximate cause of this accident.

Young had no difficulty in arguing this theory under the court's general negligence instruction:

> Now, negligence is also defined as not only the doing of some act that a reasonably careful person would not do under the same or similar circumstances, it is also defined as the failure to do something which a reasonably careful person would have done under the same or similar circumstances; and the failure, the negligence in two directions in this case on the part of the defendant, not only did she do something which a reasonably prudent person wouldn't have done, but she also failed to do something, and that failure was she failed to look ahead. She failed to see what was there to be seen.

Thus, the instructions as given adequately allowed Young to argue his theory of the case. *Levea v. G.A. Gray Corp.,* 17 Wn. App. 214, 562 P.2d 1276 (1977).

Young next argues that the court's failure to give a "duty to see" instruction applicable to the defendant Carter may have led the jury to conclude that only the plaintiff Young had a duty to "see what was to be seen." In effect, Young argues that the instructions as given unfairly emphasized the duty of the plaintiff. This argument is also without merit. Although it is error to issue instructions which generate an "extreme emphasis in favor of one party", *Samuelson v. Freeman,* 75 Wn.2d 894, 897, 454 P.2d 406 (1969); *Hinkel v. Weyerhaeuser Co.,* 6 Wn. App. 548, 553, 494 P.2d 1008 (1972), such overemphasis is not present here. The defendant's duty of care was defined for the jury in instruction 2, the general negligence instruction. So long as the instructions allowed Young to argue his theory of the

case, the number of instructions necessary to fairly present Young's theory was a matter within the trial court's discretion. *Enslow v. Helmcke,* 26 Wn. App. 101, 104, 611 P.2d 1338 (1980).

There is no indication here that the trial court abused its discretion. Accordingly, the trial court's refusal to give Young's proposed instruction was not error.

The judgment is affirmed.

JOHNSEN, J. Pro Tem., concurs.

RINGOLD, J. (dissenting)—I would reverse because the instructions unfairly favored the defendant. The vice is not the plaintiff's inability to argue his theory of the case, but that the instructions were so unfairly weighted that he was denied a fair trial. The court's instructions 2 and 4, based on WPI 10.01 and 10.02, adequately covered negligence and contributory negligence. Instruction 8, encompassing WPI 12.06, should not have been given.

Young proposed the general instruction that "Every person has a duty to see what would be seen by a person exercising ordinary care." Carter, however, submitted instructions to the court specifically directed toward Young's conduct.[1] The trial court consolidated Carter's proposed instructions 8 and 16, to form instruction 8:

> It was the legal duty of the plaintiff, WILLIAM S. YOUNG, to exercise reasonable care, at all times, for his own safety and protection and to keep a reasonable lookout ahead and see all vehicles that were there to be seen.

Either the same duty should have been required of Carter, or the instruction should not have been given. The better course is not to use the instruction unless required by the facts of the case. *See* Comments, WPI 12.06, 6 Wash. Prac. 104 (1980).

Despite the fact that Young could use the general

---

[1]For example, defendant's proposed instruction 7 (not submitted to the jury): "You are instructed that the defendant had no legal duty to yield the right of way to the plaintiff, William S. Young."

instructions to argue his theory that both parties were negligent, Carter had the advantage of the additional instruction. The jury could have misunderstood the instructions because the instruction on failure to keep a lookout and to see what was there to be seen was directed to Young only. The devastating effect of the instruction is readily apparent by contrasting Carter's and Young's closing arguments.[2]

---

[2]YOUNG'S COUNSEL: "Now, the question is why Mrs. Carter—Mrs. Carter testified, of course, that she looked. She didn't see him. One of the puzzling factors here, of course, is why didn't she see him? Well, let's look back at her testimony a bit. You will recall that she testified that she had a new '77 van, ¾-ton van. It was custom made for the Sonics basketball players. And Mrs. Carter had not had the vehicle that long, seven to nine months, something of that nature. She was—is a diminutive person. Four feet 10 inches, she testified, is her height. And on the front of that van were two mirrors, side mirrors, side mirrors that were unusually large. Ten inches by 12 inches. That is a pretty good size mirror. And when you place that size of an obstacle right next to the driver's side—and she also testified, too, that that was at eye level. There is going to be a zone, a zone where you cannot see anything. But more important than that, her testimony is that she was concerned about a vehicle that was approaching from this other intersection; a red car that was approaching, apparently, from here. And she recalled that she was looking in the mirror. She was looking in the mirror because she was concerned about this vehicle. She wasn't keeping her eyes on the road ahead. She wasn't keeping her eyes on this crosswalk to observe what was there to be seen. That is what caused this accident.

"Unfortunately, Bill Young, because he was knocked unconscious—and you recall the testimony of the fireman who arrived there shortly thereafter this accident—the fire hall located down here—he testified that Bill was unconscious when he got there and his body was lying about 10 feet south of the crosswalk. This impact in the crosswalk threw him that far. The testimony of Mr. Newman, in his own words, was that when the bicycle was hit, it acted like a catapult, projecting him forward."

CARTER'S COUNSEL: "This accident happened at an intersection. The intersection just happens to be shown here on Exhibit No. 2. The Court has instructed you that a roadway means the paved, improved or proper driving portion of a public highway designed or ordinarily used for vehicular traffic. The Court instructs you in No. 5, a marked crosswalk, such as shown on Exhibit No. 2 and on the other exhibits that you will see—the Court has instructed you that a marked crosswalk is not a roadway. The Court has instructed you that under the law in Instruction No. 7, that it was incumbent upon Bill Young to use that reasonable care that a child of his age, intelligence, maturity, training, and experience would exercise under the same and similar circumstances.

"*And in Instruction No. 8, the Court instructs you that when Bill Young decided to leave the—his position in front of these barrels and move across this crosswalk—Instruction No. 8, under the law—the Court says, 'It was the legal duty of the plaintiff, William F. Young, to exercise reasonable care at all times*

The instructions were unreasonably weighted. We should remand for new trial.

*for his own safety and protection and to keep a reasonable lookout ahead and see all vehicles that were there to be seen.'* The undisputed proofs are that this accident occurred in a pedestrian crosswalk. It was a hatched crosswalk marked on the pavement for pedestrian crossing.

"In Instruction No. 9 the court instructs you, and I quote, 'You are instructed that William S. Young, at the time and place of the accident was not a "pedestrian".' But under the undisputed facts in this case, he was operating his bicycle in a pedestrian crosswalk.

"*. . . And he didn't look up until he was within one foot 6 inches of that van. And the Court has instructed you that it was his duty to keep a reasonable lookout and see things that were there to be seen. And that would include the side of a huge van.*" (Italics mine.)