# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JOHN CUMMINGS, | ) | |
| | ) | No. 68519-8-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| SEATTLE SCHOOL DISTRICT NO. 1, | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |
| Respondent. | ) | FILED: December 23, 2013 |

SPEARMAN, J. — The issue in this appeal is whether the Seattle School District (the District) established sufficient cause to not renew (nonrenew, as used in RCW 28A.405.310 et seq.) the contract of special education teacher John Cummings. After placing Cummings on probation for receiving an unsatisfactory performance review in teaching special education math, the District determined that he failed to remediate his deficiencies and nonrenewed his contract. On review, the hearing officer found that the District had sufficient cause for nonrenewal. The superior court affirmed and Cummings appeals. We conclude that Cummings fails to show prejudicial error for his claims of error and that the record contains substantial evidence that he failed to adequately improve his deficiencies during his probation. Accordingly, we affirm.

FACTS

Cummings received his Washington state teaching certificate in 1998 and has Washington state teaching endorsements in special education Kindergarten-12th (K-12) grade and general education history 4th-12th grade. With his special education endorsement, he has the ability to teach all subjects to K-12 special education students. Around 2006, he was hired by the District to teach special education at McClure Middle School. From 2007 through the end of the 2009 school year, Cummings co-taught in a blended classroom. Under a blended classroom model, a general education teacher and a special education teacher co-teach core academic subjects to general and special education students in the same classroom. Cummings and his co-teacher used the "Connected Mathematics Program Part 2" (CMP2) curriculum to teach math.

In spring 2009, Principal Sarah Pritchett dissolved the blended model and assigned Cummings to teach special education math for the 2009-2010 school year.[1] Cummings' assignment was based in part on Pritchett's understanding that he was "highly qualified" to teach CMP2 math classes.[2] Pritchett testified that

---

[1] Cummings was assigned to teach three special education math classes (6th, 7th, and 8th grade) and two general education math improvement classes (6th and 8th grade). Cummings was not endorsed to teach general education math.

[2] A teacher can meet "highly qualified" standards under WAC 392-172A-01085 if he or she receives a sufficiently high score on the State's "High, Objective, Uniform State Standard of Evaluation" (HOUSSE) form. The District scored Cummings as highly qualified in math in an April 2009 form. It made this determination based on his resume, which indicated under "Experience" that he "[d]eveloped and taught curriculum for Social Studies, Language Arts, and Mathematics for Special Education classes" between October 1998 and June 2004 at Eastlake High School in Sammamish, Washington. Clerk's Papers (CP) at 1646. The District had completed the form without showing it to Cummings, who did not sign it. Cummings was not aware of the form until spring 2010. He clarified before the hearing officer that he taught math for less than a full year during the 1998-2004 period.

all McClure math teachers were required to use CMP2. At that time, however, she did not tell Cummings he would have to use CMP2, and he spent the summer of 2009 preparing to teach a different curriculum. While he had received CMP2 training, he was not comfortable with CMP2 and would not have accepted the assignment had he known he would have to teach it.

When the school year began, Pritchett told Cummings there was no mandated curriculum for special education math and that he should teach to the goals and objectives of students' Individualized Education Plans (IEPs).[3] In October, however, Assistant Principal Keisha Scarlett instructed Cummings to teach CMP2. There is no evidence that, after Cummings learned he was to teach CMP2, he raised an objection with Pritchett or sought a change of assignment.

On January 4, 2010, Scarlett completed Cummings' mid-year review in his special education math classes and rated his performance unsatisfactory in "instructional skill" and "knowledge of subject matter."[4] CP at 1570-73. From January 20 to April 28, he was placed on probation pursuant to former RCW 28A.405.100(4)(a) (2010)[5] and given a Performance Improvement Plan (PIP). Scarlett was assigned as Cummings' primary evaluator and math coach during his probation and Marilyn Day was assigned as his secondary evaluator.

---

[3] The processes applicable to IEPs are in WAC 392-172A-03090 through WAC 392-172A-03115.

[4] Instructional skill and knowledge of subject matter are two of eight evaluation criteria prescribed by the Collective Bargaining Agreement between the District and the Seattle Education Association, Cummings' union.

[5] RCW 28A.405.100 was amended in 2012.

On January 30, Cummings notified the District that he was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD). Around March 1, he submitted a Request for Medical Information form signed by his psychologist, Dr. Arden Snyder. Snyder indicated that Cummings had a long-term disability and could perform the functions of his position with accommodations.[6] Around March 8, Cummings sent the District a statement suggesting possible accommodations.[7] The District responded by letter on March 16, denying Cummings' requests for accommodation.[8]

Scarlett observed Cummings several times during his probation and completed three progress reports. She observed that while Cummings had good rapport with his students and had made progress in some areas, he failed to sustain such progress and make adequate improvement in his areas of

---

[6] The accommodations requested in the Request for Medical Information were assistance with organization and 1 1/2 normal time.

[7] Cummings' suggested accommodations were: (1) training in the use of software such as Easy Grade Pro, Outlook, and The Source; (2) clerical support to implement and maintain records and assistance setting up and maintaining a filing system; (3) large projects broken down into smaller steps; (4) checklists to structure tasks that require many steps; (5) excusing Cummings from non-essential tasks to allow more time on essential tasks; (6) establishing multiple short-term deadlines; (7) assistance with setting priorities; and (8) setting up Outlook to filter out non-essential emails.

[8] On appeal, the District does not contest that it denied Cummings' requests for accommodation. Below, however, there was uncertainty as to whether Cummings' requests were denied in full. As the hearing officer noted, the District's letter did not expressly state that the District denied the requests for accommodation, aside from the request for clerical support. The letter stated that Cummings had been provided with a consulting teacher who could assist with certain skills. The letter also stated that software training was available to all certificated staff and that Cummings should schedule the necessary training.

deficiency.[9] In her final evaluation, she wrote:

> Knowledge of Subject Matter: Mr. Cummings has not demonstrated a solid understanding of the most basic content knowledge within CMP2. He has attended CMP2 training in prior years and during this school year; but does not know the scope and sequence of the subject matter. Mr. Cummings['] lessons do not reflect specific strategies to assist students in their IEP identified areas of need.

CP at 1630.

Secondary evaluator Day described Cummings as a "gifted special education teacher" and noted his skill with challenging students. CP at 714. But she also observed that he did not take his students to the computer lab to use the "I Can Learn Math" computer program, which was included in his PIP, or attend all of the trainings or personal development stated in his PIP. CP at 2211. She observed that he did not follow Scarlett's suggestion to use the CMP2 teacher's manual.[10] Her final probation summary stated:

> Mr. Cummings has consistently claimed he is not competent to teach CMP math. There has been evident improvement the last

---

[9] In Scarlett's final progress report, she wrote, as to instructional skill, that Cummings' lessons carved out "limited time for student's individual thinking, inquiry or problem-solving"; that "basic instructional supports for a mathematics and IEP classroom are not in place"; that his lessons lacked "differentiation in order to meet the needs of [his] students' stated IEP goals and academic needs"; that "the pacing of [his] lessons need to be on target with [his] students' ability level in order to keep them engaged in class; and that she observed "a lack of closure and assessment in [his] lessons." As to knowledge of subject matter, Scarlett wrote that it appeared that Cummings was "operating without basic understanding of concepts being represented" and that because he lacked knowledge of the concepts, he could not clearly articulate what his students would know and be able to do as a result of his lessons. She wrote that his lack of content knowledge was "further exacerbated by the fact that [he was] unwilling to collaborate with [his] colleagues or [Scarlett] on [his] lesson and unit planning." CP at 1624-26.

[10] Day wrote that Cummings "continues to stay away from full implementation of the CMP math curriculum," even though the CMP2 teachers' manuals "have everything needed to deliver good lessons including warm-ups, examples, correct processes, [and] suggestions for a variety of learning strategies and accommodations." Day wrote, "I would say that even a teacher a bit shaky in math could, if he/she stayed a few days ahead of the students, deliver these lessons satisfactorily." She also noted that Scarlett had encouraged Cummings to use the CMP2 teacher's book and have it in front of him, because it "practically has a script and gives correct examples and answers" and "includes a section that shows teachers how to make accommodations for special needs students." CP at 2211-12.

5

> three lessons, but I agree that his math skills are minimal. And, because he does not grasp the scope and sequence of CMP content, he is not competent to modify this content.

CP at 2223.

On April 26, 2010, Scarlett, Day, Pritchett, Human Resources Manager Gloria Morris, Deputy General Counsel Faye Chess-Prentice, and Education Director Ruth Medsker met to discuss what recommendation to make to the Superintendent, Dr. Maria Goodloe-Johnson, regarding Cummings' probation. All but Day recommended nonrenewal; Day recommended that he be given an additional probationary year. Goodloe-Johnson was notified of their recommendations.

On April 30, Goodloe-Johnson notified Cummings that she had received Scarlett's recommendation that the District nonrenew his contract. She met with Cummings and his union representative on May 6. On May 10, she informed Cummings that his contract for the 2010-2011 school year would be nonrenewed for his failure to make suitable progress to remediate his teaching deficiencies in instructional skill and content knowledge.

Cummings appealed and a hearing was held.[11] The District did not request a court reporter for closing argument, which occurred on April 14, 2011. At the hearing that day, Cummings requested a court reporter. The hearing officer allowed him to call a court reporter, but when the reporter did not respond, the hearing officer directed the parties to proceed. The District had used twenty minutes of its allotted time for closing argument and Cummings had used twenty-

---

[11] The hearing officer was the Honorable Robert J. Doran.

five minutes before a court reporter appeared. The reporter transcribed the remainder of the closing arguments and the comments of the hearing officer.

The hearing officer ruled that the District proved by a preponderance of the evidence that it had sufficient cause to nonrenew Cummings' contract. Cummings appealed to the superior court, which affirmed. He now appeals to this court.

## DISCUSSION

We review the factual determinations of the hearing officer under the "'clearly erroneous'" standard. Clarke v. Shoreline School Dist. No. 412, 106 Wn.2d 102, 109-10, 720 P.2d 793 (1986) (citing RCW 28A.58.480(5)). A factual determination is clearly erroneous if it is not supported by substantial evidence in the record. State v. Jeannotte, 133 Wn.2d 847, 856, 947 P.2d 1192 (1997). We review issues of law de novo. Clarke, 106 Wn.2d at 109. When reviewing the application of the law to the facts, we make a de novo determination of the applicable law, giving deference to the hearing officer's factual determinations. Id. at 109-10.

Review of a hearing officer's decision is confined to the verbatim transcript and the evidence admitted at the hearing. RCW 28A.405.340. The court may "reverse the decision if the substantial rights of the employee may have been prejudiced because the decision was:"

(1) In violation of constitutional provisions; or
(2) In excess of the statutory authority or jurisdiction of the board or hearing officer; or
(3) Made upon unlawful procedure; or
(4) Affected by other error of law; or

(5) Clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or
(6) Arbitrary or capricious.

Id.

A superintendent has the authority to nonrenew a certificated employee's contract based on probable cause. RCW 28A.405.210. "Lack of necessary improvement during the established probationary period, as specifically documented in writing with notification to the probationer and shall constitute grounds for a finding of probable cause under RCW 28A.405.300 or 28A.405.210." Former RCW 28A.405.100(4)(a) (2010). A teacher with remediable teaching deficiencies must be given a reasonable program for improvement. Id.

Cummings contends the hearing officer erred in (1) excluding the testimony of his proposed expert witness; (2) excluding letters of recommendation and not allowing him to cross-examine Pritchett regarding her previous evaluations; (3) permitting 45 minutes of closing argument to take place without a court reporter; (4) finding that Scarlett did not have a conflict of interest; and (5) determining that Cummings' ADHD did not substantially limit his ability to teach CMP2 and that the District did not have a duty to accommodate his ADHD. He contends there was not sufficient cause for nonrenewal because (1) Goodloe-Johnson's decision was based on incomplete information; (2) his evaluation was based in part on his teaching of general education math; (3) and his assignment to teach CMP2 to special education students was not appropriate or reasonable. He also contends the hearing officer made other errors. We address these issues in turn.

8

Evidentiary Rulings

Cummings contends the hearing officer abused his discretion in making

certain evidentiary rulings. First, he contends it was an abuse of discretion and a

violation of RCW 28A.405.310(3) for the hearing officer to exclude testimony

from his proposed expert witness, Patricia Steinburg, who has experience

working with teachers and school districts in special education. A trial court has

discretion as to the admissibility of expert testimony.[12] Group Health Co-Op of

Puget Sound, Inc. v. Dep't of Revenue, 106 Wn.2d 391, 398, 722 P.2d 787

(1986). Cummings asserts that Steinburg would have testified about the legal

underpinnings of special education as provided in WAC 392-172A-03090 through

WAC 392-172A-03110. He argues her testimony would have shown that (1) it is

inconsistent with special education policies to mandate any curriculum to special

education students; (2) CMP2 is inappropriate for special education students; (3)

Cummings was held to an unfair, irrelevant, and arbitrary standard; (4) changing

Cummings' curriculum to CMP2 required a meeting of students' IEP teams; and

(5) Scarlett's evaluation lacked credibility because CMP2 was not in the students'

IEPs and yet Cummings was rated unsatisfactory in subject matter knowledge

because he did not teach to IEP-identified goals.

We conclude it was not an abuse of discretion to exclude Steinburg's

testimony. Cummings does not explain why Steinburg's testimony on laws and

---

[12] Expert testimony is admissible under ER 702 and 703 if the witness's expertise is established by the evidence, her opinion is based on a test generally accepted in the scientific community, and the testimony is helpful in deciding an issue in the case. Tennant v. Roys, 44 Wn. App. 305, 311, 722 P.2d 848 (1986). The District does not specifically respond to this claim of error, nor does it contend that Steinburg did not meet the qualifications of an expert witness.

policies as to special education could not have been made in arguments by his attorney. Testimony as to Cummings' first, second, and third points was substantially provided or could have been provided by Day. As to his fourth and fifth points, Cummings has been able to assert those arguments without Steinburg's testimony. Moreover, we do not understand RCW 28A.405.310(3), which provides that "[a]t the hearing . . . the employee may produce such witnesses as he or she may desire," to mean the employee is unrestricted in calling witnesses. See RCW 28A.405.310(7)(a) (hearing officer shall make rulings as to admissibility of evidence pursuant to applicable rules of evidence). Even if the hearing officer abused his discretion, Cummings does not show that Steinburg's testimony was likely to have changed the outcome of his nonrenewal hearing. Error without prejudice is not grounds for reversal. Brown v. Spokane County Fire Prot. Dist. No.1, 100 Wn.2d 188, 196, 668 P.2d 571 (1983).

Next, Cummings argues that the hearing officer erred in excluding letters of recommendation and in not allowing him to cross-examine Pritchett regarding her satisfactory evaluations of his teaching from 2007 to 2009. The decision to admit or refuse evidence is reviewed for abuse of discretion. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). We conclude the hearing officer properly denied such questioning of Pritchett on the basis that Cummings' previous satisfactory performance was not relevant to whether there was sufficient cause for nonrenewal based on his teaching in 2009 to 2010. We also conclude it was not an abuse of discretion to exclude the letters of recommendation. The hearing officer excluded these on the basis that they were hearsay or not relevant. These

were proper reasons to exclude the letters. Cummings argues that the hearing officer was required to consider them because Goodloe-Johnson had reviewed them, but he cites no authority in support. Furthermore, Cummings does not show that excluding the testimony from Pritchett or the letters was prejudicial.

Finally, Cummings argues that the hearing officer committed reversible error in permitting 45 minutes of closing argument without a court reporter.[13] Under RCW 28A.405.310(10), "A complete record shall be made of the hearing and all orders and rulings of the hearing officer and school board." Cummings contends that because the hearing officer ruled that the closing arguments are part of the hearing record, the statute was violated. He contends he was prejudiced by the inability to review this portion of the record, which he claims contained inaccurate arguments by the District and questions by the hearing officer that demonstrated erroneous burden-shifting. The District argues that Cummings waived any objection to improper argument or comments during the hearing when he failed to object below. We agree with the District. A party waives any objection to improper argument when it fails to raise an objection at the time, when there is an opportunity to correct it. State v. Dunaway, 109 Wn.2d 207, 221, 743 P.2d 1237 (1987). Cummings does not dispute the District's assertion that he made no objections. Furthermore, he does not explain how any

---

[13] The superior court ruled that the hearing officer violated RCW 28A.405.310(10) but the error was not prejudicial. Likewise, the hearing officer wrote in his opinion:

> If the Hearing Officer erred in not waiting longer for a court report [sic] to call or appear, it is the opinion of the Hearing Officer that there was no prejudice to Appellant because the portion, not reported, repeated substantially what was set forth in the written argument brief of his counsel.

CP 142.

errors in the District's closing argument or the hearing officer's remarks are reflected in the hearing officer's decision or written order.

### Probation's Compliance with RCW 28A.405.100

Cummings contends the District's probationary process did not comply with former RCW 28A.405.100(4)(a) (2010), which requires that he be given a "reasonable program for improvement" and states that "[t]he purpose of the probationary period is to give the employee opportunity to demonstrate improvements in his or her areas of deficiency." He contends he was not provided a meaningful opportunity to improve because (1) Scarlett had a conflict of interest and (2) the District failed to accommodate his ADHD.

First he contends Scarlett had a conflict of interest because she was both his math coach and primary evaluator. He also contends Scarlett lacked the background to evaluate a special education teacher, was not certified to teach special education, and had never evaluated a teacher during probation. In support of his contention, he points to the following testimony by Day:

> What I saw happening was that Mr. Cummings would meet with Ms. Scarlett in the role of her being the math coach, and they would talk about lessons, and then it would drop into evaluative, and there wasn't a clear line. If he's supposed to be, through the performance improvement plan, receiving assistance and help from a math coach, that should be clean, in my opinion and not tainted by the evaluation process.

CP at 657. Cummings also testified that he did not feel Scarlett was actively trying to help him improve and that he felt statements he made to her when she acted as his math coach were used against him in her evaluations.

We conclude that the determination of the hearing officer and superior court that Scarlett did not have a conflict of interest, whether it is a finding of fact or a conclusion of law,[14] was not clear error. Cummings does not show that any conflict of interest, if it existed, rose to such a level that Scarlett could not act effectively in both roles or that her acting in both roles prejudiced him. As the hearing officer aptly noted, Cummings provided no evidence that Scarlett in fact used anything she learned as his coach against him when evaluating him. The hearing officer also disagreed with Day's testimony that Scarlett's conflict of interest was evident because when acting as his coach, Day would help Cummings develop a lesson, and then when he attempted to deliver that lesson, Scarlett would observe him and note that he was not delivering the lesson as planned. The hearing officer opined:

> Based on [Day's] reasoning, the Hearing Officer reaches the opposite conclusion. The math coach could only assist Appellant in the delivery of a math lesson, if the lesson, as planned, is observed. Ms. Scarlett, as the evaluator, should have had a copy of the lesson plan and would be in a position to determine if it was delivered as she and Appellant had planned. Her dual roles were not in conflict but should have been of assistance to Appellant in improving his performance and remedying the teaching deficiencies for which he was placed on probation.

CP at 121. We agree. Furthermore, Cummings received coaching from the District's math coach, Olviles,[15] and Cummings reported that feedback from Olviles had been helpful. Thus, he was not limited to Scarlett's coaching alone.

---

[14] Cummings contends the superior court erred by determining this was an issue of fact when conflict of interest is a question of law or a mixed question of fact and law, though he cites no authority for this proposition.

[15] Olviles' first name does not appear in the record.

13

Moreover, neither former RCW 28A.405.100 (2010) nor RCW 28A.405.310 prohibits the same person from serving as a primary evaluator and coach. Finally, Cummings points to no authority stating that he could not be evaluated by an evaluator without expertise in special education or one who had not conducted a certain number of evaluations.

Second, Cummings contends the District erroneously refused to accommodate his disability, ADHD.[16] The hearing officer and the superior court both found that Cummings' ADHD was not the reason for his nonrenewal and that his lack of content knowledge in math was the reason he could not teach CMP2 to his special education students. We agree.

Cummings contends the proper inquiry is whether the District violated RCW 49.60.040(7)(d)(1)[17] and RCW 49.60.180(2)[18] by refusing accommodations. But, appealing as he does from the ruling that the District established sufficient cause for his nonrenewal, he fails to show that the District's refusal to provide his requested accommodations contributed to his failure to remediate his deficiencies during probation. Cummings testified that his inability to teach CMP2 was due to his lack of sufficient math skills, not because of his ADHD. He testified that the accommodations he requested would not have given

---

[16] "Disability" is defined as, among other things, the presence of an "impairment" that is "medically cognizable or diagnosable." RCW 49.60.040(7)(a)(i). The District does not dispute that ADHD qualifies as a disability.

[17] The statute provides in pertinent part that for purposes of qualifying for reasonable accommodation in employment, a disability must have a "substantially limiting effect upon the individual's ability to perform his or her job." RCW 49.60.040(7)(d)(1).

[18] RCW 49.60.180(2) provides in pertinent part that it is unlawful to discharge any person from employment "because of . . . the presence of any . . . disability."

him math skills he did not possess. Snyder testified that his recommendation for accommodations did not specifically address whether Cummings needed accommodations to teach math to his middle school students and that Cummings' ADHD did not contribute to his lack of content knowledge in math. Cummings cites the statement in Clarke that "school authorities should refrain from discharging a teacher as a matter of law, except in the most egregious cases, . . . especially where the teaching deficiency is related to a handicapping condition amenable to rehabilitation." Clarke, 106 Wn.2d at 117. But Cummings' deficiency was not "related to" a condition amenable to rehabilitation; as he admitted, his lack of content knowledge was not related to his ADHD.

## Sufficient Cause for Nonrenewal

Cummings contends the District did not show sufficient cause for nonrenewal because (1) Goodloe-Johnson did not give sufficient weight to Day's opinion; (2) his evaluation and nonrenewal was impermissibly based in part on his teaching of general education math; and (3) his assignment to teach CMP2 math to special education students was not reasonable.

First, Cummings contends Goodloe-Johnson did not give Day's opinion sufficient weight. He notes that Day was an experienced evaluator who had worked for the District as a middle school principal and as a high school assistant principal. He points out that Day testified that he improved during his probation. But, notwithstanding her recommendation of an additional year of probation, Day admitted that Cummings was not a competent CMP2 math teacher. Her final probation summary noted that while Cummings had shown improvement, "his

math skills are minimal" and that "because he does not grasp the scope and sequence of CMP content, he is not competent to modify this content" for his special education students. CP at 2223.

Next, Cummings contends his nonrenewal was based in part on his teaching of general education math, in violation of WAC 181-82-110(1)(b), which states that teachers assigned to teach classes outside of their areas of endorsement "shall not be subject to nonrenewal or probation based on evaluations of their teaching effectiveness in the out-of-endorsement assignments[.]" He notes he is not endorsed to teach general education math but was assigned to teach two general education classes. He points out that the hearing officer's opinion considered his teaching in those classes and that the District's letter indicating probable cause for nonrenewal did not specifically exclude any of his classes.

We conclude that WAC 181-82-110(1)(b) was not violated. As the hearing officer found, Cummings was nonrenewed based on his teaching of math in his special education classes, not based on his teaching of general education math. Cummings was placed on probation after his mid-year review in his special education math classes specifically; Scarlett's January 28, 2010 "Evaluation Form" lists the "Department" as "Special Education Math 6-8." Scarlett's observation reports during his probation reported the "Department/Assignment" under observation as "Special Education Math 6-8." CP at 1578. Cummings confirmed in his testimony that the only formal observations of his teaching were of his special education classes. Cummings refers to certain statements in the

16

"Professional Responsibility" section in Scarlett's April 26, 2010 evaluation, which were included in the hearing officer's opinion.[19] CP at 1626. But although Scarlett's discussion of Cummings' failure to implement the "I Can Learn Math" program in his general education math classes was erroneously considered by the hearing officer, Day also testified that Cummings did not implement the program in his special education classes either.

Finally, Cummings contends mandating him to teach CMP2 to special education students was not reasonable and violates former RCW 28A.405.100 (2010) and the Collective Bargaining Agreement (CBA), Article III.5.[20] He contends CMP2 was inconsistent with his students' IEPs because their IEP teams had not approved that curriculum and no changes had been made to the

---

[19] Under that section, Scarlett wrote:

> According to I Can Learn usage reports for the year, you have never implemented this necessary part of our mathematics intervention program in your math improvement classes. Your students were never given structured daily mathematics intervention instruction and have spent an entire year working on MSP practice questions. While many students in the other mathematics improvement classes have completed upwards of forty lessons, your students have not engaged in any I Can Learn instruction to improve their number sense, basic skills and problem solving. Our mathematics intervention program is an integral part of our school improvement and Performance Management plan. Your failure to implement this program is a direct violation of our Performance Management Plan and is a disservice to the vulnerable Level 1 math scoring students that have been entrusted to your instruction.

CP at1626, 100-01.

[20] Cummings also contends mandating him to teach CMP2 to his special education students violates their rights under the Individuals With Disabilities Education Act of 2004, 20 U.S.C. § 1400 et seq (IDEA). We agree with the District and the superior court that the hearing officer correctly determined that Cummings does not have standing to challenge his non-renewal based on alleged IDEA violations. See Lake Washington Sch. Dist. No. 414 v. Off. of Superintendent of Pub. Instruction, 634 F.3d 1065, 1067-69 (9th Cir. 2011) (school district does not have standing under IDEA to assert rights that belong to parents and children).

IEPs. He also contends there is no evidence that CMP2 was the required math curriculum for the District's special education students.

These arguments are not well taken. Pritchett testified that all McClure math teachers were required to use CMP2. While she did not testify that CMP2 was mandated throughout the District, Cummings points to no authority precluding a school from requiring its teachers to follow a certain curriculum. Moreover, CMP2 has a specific section for special education students, could be modified to accommodate the needs of special education students, and had been taught in the blended classrooms in which Cummings had co-taught. There was also evidence that CMP2 was being successfully taught to special education students at other middle schools in the District. During his probation, Cummings observed CMP2 taught in special education classes at Madison Middle School and had been impressed by the teacher he observed teaching that material. Furthermore, while Cummings contends that teaching CMP2 was inconsistent with his students' IEPs, he points to no authority that states that teaching a student appropriately under his or her IEP requires the IEP to specifically include that curriculum.

Former RCW 28A.405.100 (2010) is silent about this issue and Cummings does not specifically explain how that statute was violated. As for Article III.5 of the CBA, that provision states, "No single instructional philosophy or technique is prescribed by [Seattle Public Schools] for the instruction of a Special Education student." CP at 1429. But Cummings points to no authority to show that mandating a curriculum is equivalent to mandating a certain "instructional

philosophy" or "technique." The hearing officer did not clearly err in concluding that a curriculum is more similar to a "course of study," as referenced in the CBA, Article III.1, which states that teachers have a "basic responsibility to utilize properly the current SPS authorized course of study." CP at 1428. See also WAC 180-44-010(1) ("It shall be the responsibility of the teacher to follow the prescribed courses of study of the . . . and to enforce the rules and regulations of the school district.").

### Other Claims of Error

Cummings contends other errors undermine the decisions of the hearing officer and superior court. First, he contends the hearing officer violated former RCW 28A.405.100(3)(a) and (4)(a) (2010) by considering Pritchett's recommendation to the extent she purported to represent her observations of his teaching. He contends Pritchett offered her observation of his teaching performance even though she did not document her observation, advise him of any alleged deficiency, or prepare any written evaluation. We disagree. In the cited portion of the record, Pritchett testified that she had informally observed Cummings' teaching, read Scarlett's observation reports, and made a recommendation. She did not describe her observations of his teaching or testify that her recommendation was based on her informal observations.

Cummings also contends the hearing officer erroneously considered the "Professional Responsibility" section of his evaluation when he was not placed on probation for Professional Responsibility and it was not referenced in his PIP. We reject this claim because Cummings does not show any prejudice from the error.

## Conclusion

In sum, the record contains substantial evidence that Cummings failed to correct his deficiencies during his probation. Cummings testified that he did not possess the math skills to deliver CMP2 to special education students. Pritchett testified that Cummings did not meet the conditions of his PIP and that his performance was not at the minimum expected level. Her testimony was supported by Scarlett's progress reports. Day also testified that Cummings could not deliver CMP2 to special education students. The hearing officer and superior court did not err in concluding that the District had sufficient cause for nonrenewing Cummings' contract.

Affirmed.

WE CONCUR: